NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5814-13T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

THOMAS L. SCOTT, a/k/a
JAMES LONGENBERGER, and
CHRISTOPHER TUREAUD,

    Defendant-Appellant.

_____

        Argued telephonically February 12, 2016 –
        Decided March 22, 2016

        Before Judges Sabatino and Accurso.

        On appeal from the Superior Court of New
        Jersey, Criminal Division, Monmouth County,
        Indictment No. 13-04-0733.

        Stephen W. Kirsch, Assistant Deputy Public
        Defender, argued the cause for appellant
        (Joseph E. Krakora, Public Defender, attorney;
        Mr. Kirsch, on the brief).

        Keri-Leigh Schaefer, Special Deputy Attorney
        General/Acting Assistant Prosecutor, argued
        the cause for respondent (Christopher J.
        Gramiccioni, Acting Monmouth County
        Prosecutor, attorney; Mary R. Juliano,
        Special Deputy Attorney General/Acting
        Assistant Prosecutor, of counsel; Keri-Leigh
        Schaefer, on the brief.)

PER CURIAM

Defendant Thomas L. Scott appeals from his conviction of third-degree possession of a controlled dangerous substance, namely, heroin, N.J.S.A. 2C:35-10(a)(1). He also contends that the sentence imposed by the trial court was manifestly excessive. We affirm.

I.

The State's proofs showed that on the afternoon of November 27, 2012, a Long Branch police detective detained defendant on an unrelated matter. The detective found two small packages in defendant's left pants pocket. The contents of the packages were tested and shown to be 0.618 grams of heroin.[1]

Defendant's theory at trial was that he did not intend to possess the heroin and that his mother Darlene Barbella had placed the heroin in his pants without his knowledge. Although defendant did not testify at trial, he presented testimony from a family friend, Lauren Halbersberg. He also proffered testimony from his mother Barbella, who had given a defense investigator a written statement. Defendant opted to not call Barbella after the trial judge made an in limine ruling before trial, discussed infra, that is the main focus of this appeal.

---

[1] Defendant does not contest the legality of the stop and search, nor the admissibility of the lab results.

Defendant lived in Long Branch in an apartment upstairs from his mother in a duplex she owned. Halbersberg testified that on the day in question, she, defendant, and defendant's cousin Jordan Scott were all in the living room of the apartment. Scott, who appeared to her to be intoxicated, was lying on the couch asleep. According to Halbersberg, defendant was then getting ready to take a shower.

Halbersberg testified that Barbella came upstairs and noticed two packets on the table by the couch. Perceiving that the packets contained drugs, Barbella became livid and started shouting. According to Halbersberg, Barbella picked up the two packets and stuffed them in the pocket of blue jeans that were draped over the couch. Defendant, who was allegedly unaware of what his mother had done, took the jeans into the bathroom and put them on after taking his shower. He then went outside and was encountered by the police detective.

In her written statement, Barbella corroborated aspects of Halbersberg's narrative. However, as the State points out, there were several inconsistencies, including Barbella's recollection that defendant was already in the shower when she came upstairs.

Prior to trial, the State moved in limine to be permitted to cross-examine Barbella with two previous instances in which she had allegedly lied in order to protect defendant from

3                                                                    A-5814-13T3

criminal liability.  In one instance, Barbella is said to have falsely told police looking for her son that he was not home and that she was feeling ill.  In the second instance, Barbella tried to recant a written statement that she had given the police about his involvement in a burglary.

The State initially argued that the two instances of Barbella covering up for her son were admissible as her prior bad acts under N.J.R.E. 404(b), shedding light on "her character as a witness."  Defense counsel countered that the elements for admission under Rule 404(b) were not met.  Defense counsel also stressed that the two incidents were not admissible as impeachment with a prior criminal conviction under N.J.R.E. 609 because Barbella had not been convicted of any crimes relating to her past conduct.

In ruling on the in limine motion, the trial court observed that Rule 404(b) does not pertain here because the issues involve the impeachment of a potential witness.  The judge noted that N.J.R.E. 608 regarding witness impeachment would appear to be the more appropriate pertinent evidence rule.  However, the court did not enforce the language in New Jersey's version of Rule 608(a) that prohibits, subject to certain enumerated exceptions, the admission of prior specific instances of falsehoods to show a witness's propensity for untruthfulness.

Rather than enforcing the prohibition on specific instances within Rule 608(a), the court found that it had discretion under N.J.R.E. 104(a) to not apply strictly the Rules of Evidence. The court also noted that Barbella "has a propensity to cover up her son's wrongdoings." The court ruled that Barbella's two prior incidents of lying to the police would be admissible "both on cross examination and on rebuttal if she elects to take the stand."

Given the court's evidential ruling, defense counsel decided not to call Barbella as a witness, relying solely on Halbersberg's account of the events that took place in the apartment.

The jury found defendant guilty of the possession charge. The court sentenced him to a five-year prison term with a two-and-one-half-year period of parole ineligibility.

II.

Defendant raises the following points on appeal for our consideration:

> POINT I
>
> THE TRIAL JUDGE IMPROPERLY HELD THAT A DEFENSE WITNESS COULD BE IMPEACHED WITH EVIDENCE OF PRIOR SPECIFIC BAD ACTS NOT THE SUBJECT OF A CONVICTION, EVEN THOUGH THE APPLICABLE EVIDENCE RULES QUITE CLEARLY BAR THAT PRACTICE.
>
> POINT II

> THE SENTENCE IMPOSED IS MANIFESTLY EXCESSIVE.

For the reasons we will now discuss, neither of these points warrants relief.

### A.

Defendant contends that the trial court misapplied the rules and principles of evidence law in determining that if Barbella took the witness stand in the defense case, the State would be permitted to impeach her credibility by disclosing to the jury that she had twice lied in the past in order to protect her son from law enforcement. The State does not endorse the specific analysis set forth by the trial court but instead maintains that Barbella's two prior acts would have been admissible evidence of her strong bias as a witness in favor of her son's interests. The State further argues that even if the trial court erred in deeming the impeachment evidence admissible, any such error was harmless in light of the record as a whole.

Our scope of review of the trial court's evidentiary ruling requires considerable deference. Such rulings generally "should be upheld 'absent a showing of an abuse of discretion, i.e. there has been a clear error of judgment.'" State v. J.A.C., 210 N.J. 281, 295 (2012) (quoting State v. Brown, 170 N.J. 138, 147 (2001)). "An appellate court applying this standard 'should

not substitute its own judgment for that of the trial court, unless "the trial court's ruling is so wide of the mark that a manifest denial of justice results."'"  Ibid. (quoting Brown, supra, 170 N.J. at 147).

As an initial matter, we observe that the trial court had a sound basis to find that Rule 404(b) would not justify the admission of Barbella's past acts of making false statements in order to protect her son from the authorities.  Rule 404(b) is generally a rule of exclusion, subject to certain exceptions, rather than a rule of admission.  State v. Herrerra, 211 N.J. 308, 339 (2012).  None of the enumerated exceptions listed within Rule 404(b) readily applies here to the mother's prior conduct.

The judge correctly perceived that the more pertinent evidence rule on point would be Rule 608, which allows the character of a testifying witness to be impeached by certain means.  However, Rule 608 is unavailing to the State because, subject to certain caveats not applicable here, a witness's character trait for truthfulness or untruthfulness is only demonstrable by opinion or reputation evidence and "cannot be proved by specific instances of conduct." N.J.R.E. 608(a).  See also State v. Parker, 216 N.J. 408, 418-19 (2014).

The trial court did stray in its analysis in finding that it had the authority to "relax" these evidence provisions under

Rule 104(a).  Rule 104(a) does not provide a substantive basis for admissibility but instead is, in essence, a procedural device for a trial court in making a ruling on an evidential issue.  Indeed, the drafters of our present Rules of Evidence specifically make clear in a Comment that, unlike the Court Rules, the Rules of Evidence were designed to omit a general "relaxation rule" akin to Court Rule 1:1-2 except for certain enumerated situations not pertinent here.  See N.J.R.E. 101(a)(2).  See also Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, 1991 Supreme Court Committee Comment on N.J.R.E. 101(a) (2015).

On appeal, the State contends that the trial court's evidentiary ruling should be sustained on an alternative ground: namely, that Barbella's past behavior of lying in order to shield her son from law enforcement authorities is evidence of her strong bias in favor of her son, showing that she will go to such lengths as making false statements to law enforcement.

As a procedural matter, defendant objects to the State's present reliance on bias impeachment principles because the prosecutor did not advance that specific argument to the trial court.  Although it would have been preferable for the State to have asserted this alternative legal argument sooner, we are unpersuaded that the State should be barred from advocating it here.  We must bear in mind that our role on appeal is to review

judgments and orders, not trial court opinions. Bandler v. Melillo, 443 N.J. Super. 203, 210 (App. Div. 2015). "[A] party may challenge only the propriety of the judgment entered by the trial court, not the reasoning underlying the court's decision." Ibid. (citing Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001)). "It is a commonplace of appellate review that if the order of the lower tribunal is valid, the fact that it is predicated upon an incorrect basis will not stand in the way of its affirmance." Isko v. Planning Bd. of Livingston, 51 N.J. 162, 175 (1968), abrogated on other grounds by, Commercial Realty & Res. Corp. v. First Atl. Props. Co., 122 N.J. 546 (1991).[2]

Turning to the merits of the bias impeachment question, we agree with the State that Barbella's past acts of lying to protect her son, assuming they were proven to the jury, qualify as admissible evidence under the pertinent case law. Although

---

[2] We do not regard the Supreme Court's opinion in State v. Witt, 223 N.J. 409 (2015), disallowing defendant from challenging the lawfulness of a motor vehicle stop for the first time on appeal, as precluding our consideration of the bias impeachment argument here. The Court in Witt found it significant that the appellant's failure to raise the lawfulness issue in the trial court deprived the opposing side "the opportunity to establish a record that might have resolved the issue[.]" Id. at 419. That is not the case here. The bias impeachment issue is a pure legal question that requires no further development of the factual record. Moreover, the admissibility of the impeachment proof, unlike the lawfulness of the motor vehicle stop in Witt, was a sharply contested issue in the trial court.

neither the federal nor New Jersey evidence rules contain a specific "bias impeachment" provision, the ability of an opposing party to undermine the credibility of a testifying witness on the grounds of bias is a well-established principle under our common law. See, e.g., United States v. Abel, 469 U.S. 45, 52, 105 S. Ct. 465, 469, 83 L. Ed. 2d 450, 457 (1984). The common law of evidence conceives of bias as a term describing "the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, [her] testimony in favor of or against a party." Ibid. In Abel, the Supreme Court authorized the admission of proof of extrinsic acts as a form of bias impeachment, even though no specific codified federal rule of evidence contains such an explicit authorization. Id. at 469 U.S. 56, 105 S. Ct. at 471, 83 L. Ed. 2d at 460.

Similarly in New Jersey, the admissibility of evidence of conduct to substantiate a witness's bias for or against a party in a case is well established in our case law. See, e.g., State v. Pontery, 19 N.J. 457, 473 (1955); State v. Holmes, 290 N.J. Super. 302, 313 (App. Div. 1996). As our Supreme Court acknowledged again very recently, "the claimed bias of a witness is generally an appropriate inquiry in cross-examination in criminal trials[.]" State v. Bass, ___ N.J. ___, ___ (2016) (slip op. at 19). Of course, the trial court may limit inquiry

into a witness's potential bias, based upon concerns of "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Id. at 20 (citing Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435, 89 L. Ed. 2d 674, 683 (1986)).

Here, the admission of Barbella's past acts demonstrating the strength of her bias for defendant is consistent with these well-settled principles. To be sure, a mother would naturally be presumed to favor her child's interests in avoiding criminal prosecution and jail. But the proffered evidence goes further than that general proposition. Barbella's past acts of lying to the authorities for her son would establish not only that she possesses such parental bias, but that she would risk punishment herself by lying to the authorities concerning her son's actions or whereabouts.

The trial court did not misapply its authority in ruling that Barbella's past acts exhibiting the degree of her bias would be a fair method of impeaching the credibility of her narrative that she placed the heroin in her son's pants pocket without him being aware of it. Nor do we find that such proof was categorically inadmissible as unfairly prejudicial under N.J.R.E. 403.

Even if, for the sake of discussion, the trial court erred in ruling that Barbella's prior untruthful conduct was

admissible, we agree with the State that the ruling was, at most, harmless error in light of the record as a whole. Barbella's account was essentially cumulative of Halbersberg's testimony, which the jury obviously did not believe. It is highly speculative that the jury could have believed Barbella's repetitive version of the same events. Moreover, even if the court had excluded Barbella's past untruthful conduct to protect her son, the State would have been entitled in summation to argue the mother's bias anyway. The jurors themselves might have independently discounted the probative force of the mother's testimony, in light of the family relationship.

For these many reasons, the court's in limine ruling is sustained. Defendant's conviction is affirmed.

### B.

We need not dwell at length upon defendant's separate argument that his sentence is excessive. Defendant has an extensive criminal record that includes twenty-three adult convictions, five of them for illegal possession of CDS. The sentencing judge rightly deemed defendant a "habitual offender" who poses the risk of committing future crimes. We recognize that the judge did not explicitly state why he rejected defendant's invocation of mitigating factors one (lack of serious harm) and two (defendant did not contemplate that his conduct would cause serious harm) and that he should have done

so. See State v. Case, 220 N.J. 49, 69 (2014). Nevertheless, we are not persuaded to remand this matter for resentencing because of that omission, given the patent strength of the aggravating factors that the judge found to predominate here. The sentencing judge was clearly made aware from the trial proofs that defendant possessed slightly more than a half of a gram of heroin, but nevertheless was persuaded to impose a five-year custodial sentence with a two-and-one-half-year parole disqualifier when considering defendant's individual characteristics.

Given defendant's lengthy prior criminal record, the chosen sentence does not shock our conscience, and we do not second-guess it. State v. Bieniek, 200 N.J. 601, 607-08 (2010).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5814-13T3