**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3426-19

ANGELICA VARGAS,
ZAHEER AZIZ,
CHANNING COUCH,
KELLIE DOBSON,
SAMUEL WATKINS,
SCOTT ZELINKSI, and
CHARLES BELL,

      Plaintiffs-Appellants,

v.

INDEPENDENT SERVICE
WORKERS OF AMERICA,
DERIK BECKETT, and
FRED PARSONS,

      Defendants-Respondents.

_____

Submitted May 10, 2021 – Decided June 15, 2021

Before Judges Sabatino and Currier.

On appeal from the Superior Court of New Jersey, Chancery Division, Hudson County, Docket No. C-000103-19.

Feintuch, Porwich & Feintuch, attorneys for appellants (Donald R. Moran, on the brief).

Cohen, Leder, Montalbano & Connaughton, LLC, attorneys for respondents (Matthew G. Connaughton, on the brief).

PER CURIAM

This appeal from the Chancery Division's grant of a motion for summary judgment implicates the primary jurisdiction of the Public Employment Relations Commission ("PERC"). After considering the allegations and claims, we conclude PERC was the proper venue to present, in the first instance, all or at least many of the disputes in this matter. Accordingly, we affirm the grant of summary judgment, albeit partly for different reasons.

Appellants Angelica Vargas and Zaheer Aziz, two of the seven named plaintiffs in this case, were members of the Independent Service Workers of America ("ISWA"), a labor union. ISWA is the sole representative of blue and white collar personnel employed by the Jersey City Housing Authority ("JCHA"), a public entity, for purposes of collective negotiations related to employment conditions and related matters.

On February 28, 2019, Vargas, the former Recording Secretary of the ISWA Executive Board, was charged by the ISWA with four violations of the union constitution and bylaws under "article 12, Section 1." After hiring

independent counsel and seeking an adjournment and further discovery, Vargas was not allowed to have her counsel present at the internal union trial. Consequently, Vargas declined to participate in that trial because she was denied such outside representation.

On April 9, 2019, Vargas received a letter from ISWA stating that she was found guilty on all four charges, discharging her as Recording Secretary and expelling her from the union. The validity of her expulsion apparently has not yet been brought before PERC.

While Vargas's proceedings were developing, on March 20, 2019, Aziz filed an Unfair Practice Charge with PERC. Aziz, a Senior Maintenance Repairer with the JCHA and union member, alleged among other things that the executive officers of ISWA: had "not processed grievances"; were "continually working in harmony with management to the detriment of union members"; failed to provide members with copies of the constitution and bylaws; and, for various reasons, had not been legally elected to, and compensated for their positions. Aziz requested PERC to compel ISWA officials to: "provide minutes of all meetings"; "provide evidence that officers have been lawfully elected"; and "provide minutes of meetings or vote tallies showing lawful elections." The

3

charges filed by Aziz with PERC contained no reference to the expulsion of Vargas from her position or membership.

Five days later, on March 25, 2019, Aziz received a response from PERC. In essence, the PERC letter preliminarily declined to accept jurisdiction over Aziz's charge, due to a lack of "enough specificity to implicate [PERC's] jurisdiction." The letter further explained that, pursuant to N.J.A.C. 19:14-1.3, the allegations made by Aziz were required to include dates and information alleging that the unfair practices occurred within six months from the date of the filed charge. The letter notably stated, with respect to PERC's jurisdiction:

> [PERC] is without jurisdiction to enforce union constitutions and bylaws, resolve procedural irregularities in union disciplinary proceedings, require the union to supply information to members, or referee or resolve internal union disputes [provided the claims are] unconnected to allegations that the union, for arbitrary, discriminatory, invidious, capricious, or bad faith reasons, violated its duty to represent its members fairly in contract negotiations and grievance processing or excluded, expelled, suspended, or otherwise prevented a member from seeking to participate in union affairs affecting his or her employment conditions.
>
> [(Emphasis added).]

The letter gave Aziz until April 1, 2019 to amend his charge to include sufficient specificity to implicate the jurisdiction of PERC. The letter further instructed

that, pursuant to N.J.A.C. 19:14-1.5(e), if no amended charge was filed by the specified date, the matter would be dismissed and "the charge may only be reopened upon written, timely motion and upon good cause." (Emphasis added). According to the briefs on appeal, Aziz has not filed such an amended charge with PERC.

On May 30, 2019, Vargas and Aziz, along with five other union members as co-plaintiffs, filed a two-count complaint in the Chancery Division, essentially combining the claims made in Aziz's Unfair Practice Charge with allegations concerning Vargas's ISWA expulsion. Count one alleged similar facts to those in Aziz's Unfair Practice Charge. That count sought as a remedy an order directing ISWA and its executives to provide bank statements and financial reports, "a certified copy of the constitution" with evidence of its adoption, and salary information for the officers. Count two presented allegations concerning the propriety of Vargas's expulsion, and sought as remedy the appointment of a receiver until the matter was resolved.[1]

---

[1] In a motion for leave to amend the complaint, plaintiffs sought to include more specific allegations and an additional count. The Chancery judge denied that application deeming it "an entirely new complaint, rather than an amendment," and thus would unreasonably delay discovery and "substantial[ly] prejudice" existing and proposed new defendants. Plaintiffs do not challenge this particular ruling on appeal.

A-3426-19

After the close of discovery, defendants moved for summary judgment on the papers, and both parties submitted briefs. In an oral opinion, the Chancery judge granted defendants' motion. In doing so, he ruled that the requested documents had been produced in discovery and that plaintiffs' counter-statement of undisputed material facts contained "only seven pages of admission and denials without any meaningful citation," which "deprive[d]" the court of a basis to determine whether there were "any genuine issues of any material fact for trial."

The judge further noted that the claims alleging that Vargas was unfairly expelled from her ISWA membership and position should have been brought before PERC. The judge reasoned that, under N.J.S.A. 34:13A-5.2, -5.3, and -5.4, PERC is the "exclusive administrative remedy . . . to resolve [the] issues" brought by plaintiffs in count two of their complaint.

In its implementing order dated April 9, 2020, the trial court dismissed plaintiffs' claims with prejudice but "subject to any filing of any claims before PERC." The court declined to appoint a receiver, stating in its oral opinion that there was no evidence substantiating "either malfeasance or non-feasance on the part of the [u]nion leadership . . . ."

On appeal, plaintiffs seek to have summary judgment overturned, arguing among other things that there are genuine issues of material fact whether the union constitution was properly ratified by union membership. According to plaintiffs, defendants relied upon the allegedly unratified constitution as a justification for the failure to hold proper meetings and elections, and to validate Vargas's expulsion. They further argue that this case was properly before the Chancery Division, rather than PERC, because PERC "declined jurisdiction" in the letter sent to Aziz. Plaintiffs further assert the remainder of the issues are within the purview of the Chancery Division.

Having considered these contentions, we agree with the Chancery judge that PERC had apparent jurisdiction over Vargas's allegedly wrongful expulsion asserted in count two. We affirm its order in this respect. We also affirm the grant of summary judgment as to count one, albeit for slightly different reasons.

As a preliminary matter, we note that on a motion for summary judgment the reviewing court will apply the same standard as the trial court, viewing the evidence in the light most favorable to the non-moving party. Estate of Narleski v. Gomes, 244 N.J. 199, 205 (2020) (citing Harz v. Borough of Spring Lake, 234 N.J. 317, 329 (2018)); R. 4:46-2(c). We must "consider whether the competent evidential materials presented . . . are sufficient to permit a rational

factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Therefore, we owe no special deference to the trial judge's assessment of the documentary record, as the decision amounts to a ruling on a question of law. Manalapan Realty, L.P. v. Twp. Comm. of the Twp. of Manalapan, 140 N.J. 366, 378 (1995).

The present case fundamentally concerns the primary jurisdiction of PERC, a State agency. In Magic Petroleum Corp v. Exxon Mobil Corp., 218 N.J. 390, 405-06 (2014), the Supreme Court explained that the "doctrine of primary jurisdiction is applicable when a case is properly filed in the Superior Court but the court declines original jurisdiction, referring specific issues to the appropriate administrative body." Ibid. (citing Daalman v. Elizabethtown Gas Co., 77 N.J. 267, 269 n. 1 (1978)). Accordingly, the "court gives deference to the administrative body's interpretation of its own regulations and findings of fact on particular issues that are within the special competence of the agency pursuant to applicable statutes." Ibid. The court essentially "retains jurisdiction but defers action until the agency has reviewed the case and employed its expertise." Ibid. (citing Campione v. Adamar, Inc., 155 N.J. 245, 264 (1998)) (emphasis added).

The primary jurisdiction doctrine serves two purposes: (1) it allows administrative agencies to apply expertise in interpreting their own regulations, and (2) preserves uniformity in interpretation of those regulations. <u>Curzi v. Raub</u>, 415 N.J. Super. 1, 20 (App. Div. 2010). A court should defer to an agency's primary jurisdiction if denying the agency's power to resolve the contested issues "would be inconsistent with the statutory scheme which vested the agency with the authority to regulate [the] industry" in the first place. <u>Ibid.</u> (quoting <u>Borough of Haledon</u>, 358 N.J. Super at 302) (internal quotations omitted).

In determining whether primary jurisdiction applies, our courts generally consider a four-prong test:

> (1) Whether the matter at issue is within the conventional experience of judges;
>
> (2) Whether the matter is peculiarly within the agency's discretion, or requires agency expertise;
>
> (3) Whether inconsistent rulings might pose the danger of disrupting the expertise; and
>
> (4) Whether prior application has been made to the agency.
>
> [<u>Ibid.</u> (internal citations omitted).]

In In re PANJ, 442 N.J. Super. 185, 187-88 (App. Div. 2015), this court concluded that PERC jurisdiction was appropriate, pursuant to N.J.S.A. 34:13A-5.4b(1), where unfair practice charges concerning internal union disputes, disciplinary charges, elections, and misappropriation of union dues were involved. We explained the settled legal principle—which was recognized in PERC's letter to Aziz—that the purview of PERC does not extend to merely intra-union disputes "unconnected to allegations and proof that an unfair practice has been committed." Id. at 191 (emphasis added). However, the Employer-Employee Relations Act "prohibits interference with a . . . [public employee's] right to 'assist' in a labor organization." Id. at 195 (citing N.J.S.A. 34:13A-5.3, -5.4b(1)).

We determined in PANJ that where the plaintiffs were suspended, they were also "barred from participating in any union activities for a significant period of time . . . [during] which they may have otherwise 'assist[ed]'" in union affairs affecting their employment conditions. As a result, PERC jurisdiction was appropriate under N.J.S.A. 34:13A-5.3. Id. at 195. Thus, the interference contemplated by N.J.S.A. 34:13A-5.4b(1) includes the expulsion and suspension of union members for "arbitrary, capricious or invidious" reasons. Id. at 194.

Applying these principles to the present case, the claims brought under count two of the complaint, alleging impropriety in Vargas's expulsion, are suitable to be considered before PERC. Although issues concerning the interpretation of the terms of a union constitution may at times properly be within the ambit of the Superior Court, see Sheet Metal Workers' Intern. Ass'n Local Union 22 v. Kavanagh, 443 N.J. Super. 39, 42-44 (App. Div. 2015), the issues presented here implicate PERC's expertise to insure uniform interpretation of the Employer-Employee Relations Act.

Vargas was an ISWA member and executive board member who was expelled after declining to attend her own internal trial because she was denied the opportunity to have outside counsel present based upon apparent union bylaws. She argues that the decision to deny her outside counsel in the internal trial was arbitrary because the constitution contained "[n]o such language."

We considered a similar issue in Sheet Metal Workers, but that case differed in that the union member alleging the violations had resigned his membership prior to the internal trial which found him guilty of various charges and imposed a steep fine. Id. at 42-44. That is, the issue there was the fine imposed, not the member's expulsion. Moreover, we applied contract principles to the interpretation of the union constitution.

11

This case differs from Sheet Metal Workers, and implicates the tenets of N.J.S.A. 34:13A-5.3 and -5.4b(1) as to whether an executive board member of a union is entitled to outside counsel at an internal hearing, and whether her expulsion is a violation of her right to "assist" in an employee organization as explained in PANJ. Inconsistent rulings by courts on this matter may lead to inconsistent interpretations of the Employer-Employee Relations Act. Therefore, the primary jurisdiction as to that issue is with PERC. We further note that her allegations were not included within the Unfair Practice Charges filed by Aziz, and therefore have not yet been considered by the agency.

The Chancery judge was therefore correct in determining that jurisdiction was properly before PERC concerning count two.

As to count one, regarding the allegations originally brought by Aziz in the Unfair Practice Charges, we must remain cognizant that on appeal our role is to review judgments and orders, not trial court opinions. Bandler v. Melillo, 443 N.J. Super. 203, 210 (App. Div. 2015). "[A] party may challenge only the propriety of the judgment entered by the trial court, not the reasoning underlying the court's decision." Ibid. (citing Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001)). "It is a commonplace of appellate review that if the order of the lower tribunal is valid, the fact that it is predicated upon an incorrect basis

will not stand in the way of its affirmance." Isko v. Planning Bd. of Livingston, 51 N.J. 162, 175 (1968), abrogated on other grounds by, Commercial Realty & Res. Corp. v. First Atl. Props. Co., 122 N.J. 546 (1991).

The issues in count one tentatively appear to be likewise within the purview of PERC. The letter from PERC did not decline jurisdiction over Aziz's claims. Instead, it invited Aziz to amend his allegations with more specificity so that PERC could determine whether jurisdiction was appropriate. Aziz alleged, among other things, that ISWA executives had "not processed grievances" and were "continually working in harmony with management to the detriment of union members," "failed to process grievances," and that "officers have failed and refused to give members cop[ies] of [the] constitution and by-laws." By PERC's own letter, the issue regarding grievance processing may well be within the scope of its jurisdiction on its own. However, Aziz filed no amended charges by the April 1, 2019 deadline to appropriately invoke the jurisdiction of PERC.[2]

_____

[2] We express no opinion as to whether Aziz is now barred from reinstating his complaint pursuant to N.J.A.C. 19:14-1.5(e). That regulation requires that a written motion to reinstate a dismissed charge be made "fifteen days after the date a charge has been dismissed" and upon a "showing of extraordinary circumstances or to prevent injustice." PERC must evaluate that timeliness exception in the first instance, in light of plaintiffs' decision to attempt to bring

13                                                                    A-3426-19

In sum, the grant of summary judgment by the Chancery Division is affirmed, subject to the filing and consideration of claims before PERC.

If, hypothetically, PERC declines jurisdiction, one or more plaintiffs may seek a timely appeal before this court pursuant to Rule 2:2-3(a)(2). Conversely, if PERC exercises jurisdiction and renders a decision on the merits, any aggrieved party can appeal that disposition under the same rule. We do agree with the trial court that the appointment of a receiver was not warranted in this case, but that can be revisited should plaintiffs pursue a remedy before PERC and with consideration of more recent developments in ISWA's management as may at that time apply. In any event, the present appeal is concluded, and we do not retain jurisdiction.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

their claims in the Chancery Division and the ensuing passage of time. In any event, Aziz's own failure to amend his charge has no impact on the ability of Vargas and other plaintiffs to seek relief before PERC and invoke its primary jurisdiction.

A-3426-19